Ronald G. **BALLINGER, Sr.,** Plaintiff,

v.

**EATON CORPORATION,** Defendant.

No. 1–00–CV–90075.

United States District Court,
S.D. Iowa,
Western Division.

Aug. 5, 2002.

Richard B. Maher, Omaha, NE, for Plaintiff.

Michael NMI Eason, Brian J. McGrath, Blackwell, Sanders, Peper & Martin, Omaha, NE, Jeffrey D. Zimon, Benesch, Friedlander, Coplan & Aronoff, LLP, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

The Court has before it Defendant's Motion for Summary Judgment. Plaintiff is seeking review of his denial of disability benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* For the reasons set forth below, the Court denies Defendant's motion and grants summary judgment in favor of the Plaintiff.

## I. BACKGROUND

The Plaintiff in this case is Ronald G. Ballinger, Sr. He is sixty-one years old. Ballinger began working as a laborer for Defendant, Eaton Corporation ("Eaton"), in 1972. He held several positions at Eaton but eventually transferred to the cutting and grinding division in July 1973, where he stayed for the remainder of his employment.

In 1992, Ballinger suffered two separate injuries. On September 12, 1992, he strained his back at work. He was unable to work for three weeks after the incident. Then, on October 27, 1992, he was in a nonwork-related car accident. From that accident he suffered cervical and shoulder strain.

Subsequent to these injuries, Ballinger underwent two surgeries for rotator cuff reconstruction. The operation to repair his right rotator cuff was in April 1994, and the operation on his left rotator cuff was in February 1995. He was released to work by May 1995. However, Ballinger continued to suffer from neck and shoulder pain. On October 18, 1995, Dr. Rassekh, a neurosurgeon, performed an MRI on Ballinger and informed him that further surgeries would not be beneficial. Eaton then referred Ballinger to Dr. Teeter in December 1995, regarding Ballinger's continued complaints of lower and upper back pain. Dr. Teeter referred him to physical therapy and then released him to return to work.

Dr. Gammel of Disability Evaluation Services performed a Physical Capacities Evaluation of Ballinger on February 5, 1996. Dr. Gammel concluded that, pursuant to the first injury from the work-related incident, Ballinger could do the following in an eight hour workday: (1) sit for eight hours total, two hours at a time; (2) stand for two hours total, a half hour at a time; (3) walk two hours total, a half hour at a time; and (4) lift or carry continuously five pounds. Pursuant to the second injury from the nonwork-related car accident, Dr. Gammel concluded that Bal-

linger could do the following in an eight hour workday: (1) sit for eight hours total, eight hours at a time; (2) stand for eight hours total, eight hours at a time; (3) walk for eight hours total, eight hours at a time; and (4) lift or carry occasionally twenty pounds maximum.

After the Physical Capacities Evaluation, Ballinger began to complain of bilateral elbow pain. Dr. Teeter recommended that Ballinger not perform any repetitious work. However, Dr. Morrison removed Ballinger from work entirely until further notice. After leaving work on March 5, 1996, Ballinger filed for and received short term disability benefits, effective February 28, 1996 through July 22, 1996. On March 11, 1996, Vocational Rehabilitation Specialists generated an Employability Report for Ballinger. The report concluded that Ballinger could engage in sedentary work activity on a full-time basis with the restriction that he could only stand or walk for a maximum of four hours in an eight hour workday.

In August 1996, Ballinger applied for benefits under Eaton's Long Term Disability Plan for U.S. Employees ("LTD Plan" or "Plan"). Claims are processed and administered by First Health Corp., a/k/a First Health Group, the Claims Administrator of the LTD Plan ("Claims Administrator"). The Plan defines coverage of disabilities as follows:

(1) during the first twenty-four months of such disability, inclusive of any period of short term disability, you are totally and continuously unable to perform any and every duty pertaining to *your occupation* or employment with Eaton Corporation or one of its subsidiaries; and (2) during the continuation of such total disability following the first twenty-four months, you are totally and continuously unable to engage in *any occupation* or perform any work for compensation or profit for which you are, or may become, reasonably well fitted by reason of education, training or experience.

(Eaton Corporation Long Term Disability Plan Summary at 9) (emphasis added).

On October 11, 1996, Ballinger submitted a Disability Continuation Statement ("DCS") signed by Dr. Kenrik to the Claims Administrator in support of his claim for benefits. The DCS stated that Ballinger was "totally and continuously disabled (unable to work)" from February 28, 1996 to present. The DCS is a medical evaluation form provided by Eaton and administered by First Health Corp. The DCS instructions read, in their entirety, as follows:

To avoid interruption in continuance of your disability benefits, please follow these instructions:

(1) Complete Part A below, and take the form to your doctor.

(2) Your doctor must complete and sign Part B, and return the form to First Health for processing.

The form contains the following employment options: "patient was totally and continuously disabled (unable to work);" "patient returned to work;" "if still disabled, patient should be able to return to work;" and "may return to work." All of the options are followed by spaces for dates.

The Claims Administrator notified Ballinger on November 12, 1996 that he was eligible for twenty-four months of LTD benefits under the first tier of the Plan because he could not perform the duties of *his regular position* with Eaton. Benefits were effective retroactively beginning July 23, 1996. Under the Plan, the twenty-four months of benefits under the first tier included the six months of short term disability benefits Ballinger had already received.

Ballinger then proceeded to send the Claims Administrator two more DCS forms. On November 20, 1996, Ballinger sent a DCS from Dr. Egger which stated that Ballinger was totally and continuously disabled (unable to work) from February 28, 1996 to the current date. Also, on June 25, 1997, Ballinger submitted another DCS from Dr. Kenrik stating that he was totally and continuously disabled (unable to work) from April 1993[1] to present. However, in 1996 and 1998 Ballinger stated that he "could" or "would have tried" to work if Eaton would have found him a job.

On January 27, 1998, the Claims Administrator notified Ballinger that his first tier benefits would end on February 28, 1998. Ballinger would need to show that he could not perform *any occupation* to continue receiving LTD benefits under the second tier of the Plan. After repeatedly requesting medical documentation from Ballinger and his doctors in January, March, April, and May, the Claims Administrator did not receive any information supporting Ballinger's continued disability under the second tier of the Plan. On July 23, 1998, Ballinger submitted to a Functional Capacity Evaluation ("FCE") with HealthSouth at the Plan Administrator's request. Michele Jarzynka, a Registered and Licensed Occupational Therapist, conducted the FCE, which lasted two hours. Jarzynka concluded that Ballinger was able to work at a sedentary physical demand level for an eight hour workday. On August 3, 1998, the Claims Administrator notified Ballinger that his claim for second tier benefits was denied and that he had a right to appeal that decision.

Ballinger appealed the decision to deny him second tier LTD benefits and submitted evidence in support thereof. On September 1, 1998, Ballinger faxed a DCS completed by Dr. Artherholt to the Claims Administrator. The DCS concluded that Ballinger was totally and continuously disabled (unable to work) from February 29, 1996 to an indefinite time. Dr. Artherholt also included medical notes with the DCS. The notes suggest seeking a report from Dr. Kenrik or Dr. Morrison. In addition, the notes state that Ballinger "appears unable to work." Ballinger, by his own admission, did not engage in any discussion concerning his employability prior to the completion of the DCS. At the same time, Ballinger also submitted Dr. Egger's medical notes pertaining to office visits in April, June, and July 1998. These notes discuss Ballinger's persistent pain but do not address his employability. On September 1, 1998, the Claims Administrator notified Ballinger that his appeal for second tier LTD benefits was denied. The Claims Administrator stated that its denial of benefits was based on the lack of specific documentation and information pertaining to Ballinger's disability from *any occupation*. The Claims Administrator again notified him of his right to appeal the decision.

On September 28, 1998, Richard Maher, Ballinger's attorney, again appealed the denial of second tier benefits. He submitted another DCS signed by Dr. Kenrik on November 11, 1998. The DCS stated that he was totally and continuously disabled (unable to work). Ballinger, by his own admission, did not engage in any discussion concerning his employability with Dr. Kenrik prior to the completion of the form. The Claims Administrator denied his second appeal stating that since Ballinger's October correspondence it had only received one disability continuation statement from Dr. Kenrik and "that is not sufficient information to warrant disability." The Claims Administrator also notified Ballinger of his right to pursue a final appeal by submitting a written request for

---

1. April 1993 was when Ballinger first visited Dr. Kenrik.

appeal and additional supporting medical documentation.

Ballinger did not submit a written request for a final appeal. Instead, on May 13, 1999, he submitted medical records from Dr. Egger concerning his continued disability. The notes from Dr. Egger reference information from office visits in April 1998 continuing through May 1999. The notes discuss medication dosages and persistent pain, but do not address employability. The Claims Administrator again denied Ballinger's claim for second tier benefits, stating that the documents submitted in May did not constitute a formal written appeal. Ballinger filed a petition in state court on November 16, 2000, which Eaton then removed to this Court on December 20, 2000.

## II. LEGAL STANDARD

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court may grant summary judgment sua sponte against the moving party, without a cross-motion, where "the party against whom the judgment is entered has had a full and fair opportunity to contest that there are no genuine issues of material fact to be tried and the party granted judgment is entitled to it as a matter of law." *Burlington Northern Railroad Co., v. Omaha Public Power District,* 888 F.2d 1228, 1231 (8th Cir.1989). In an ERISA benefits interpretation case, such as this case, summary judgment is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Johnson v. Land O' Lakes, Inc.,* 18 F.Supp.2d 985, 993 (N.D.Iowa 1998) (quoting *Crain v. Board*

*of Police Comm'rs,* 920 F.2d 1402, 1405–06 (8th Cir.1990)).

## III. DISCUSSION

■ The question presented here is whether it was an abuse of discretion for Eaton to deny Ballinger disability benefits. The Court reviews the administrator's decision for an abuse of discretion when an ERISA plan gives the administrator "discretionary authority to determine eligibility for benefits." *House v. The Paul Revere Life Insurance Company,* 241 F.3d 1045, 1048 (8th Cir.2001) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Section 1.4(b) of the LTD Plan states that "the Plan Administrator shall use its discretion to interpret the terms and purpose of the Plan." Section 1.4(b) further states that "the Plan Administrator and the Claims Administrator shall have discretionary authority to determine eligibility for benefits." These passages clearly and explicitly state that the administrator has discretionary authority to determine eligibility for benefits. The Court does not find that Ballinger presented any "material or probative evidence," *Woo v. Deluxe Corp.,* 144 F.3d 1157, 1160 (8th Cir.1998), that demonstrates the presence of "a palpable conflict of interest or a serious procedural irregularity," *id.,* which would trigger a more deferential standard of review.

■ Under the abuse of discretion standard the Court must determine whether "a reasonable person *could* have reached the same decision." *Paul Revere,* 241 F.3d at 1048 (emphasis added); *see also Wald v. Southwestern Bell Corp. Customcare Med. Plan,* 83 F.3d 1002, 1007 (8th Cir.1996) (stating the same). The analysis focuses attention on the presence or absence of substantial evidence that supports the decision to deny benefits.

*Paul Revere,* 241 F.3d at 1048. In performing this analysis, the Court may only consider the evidence available to the administrator at the time the decision was made. *See Conley v. Pitney Bowes,* 176 F.3d 1044, 1049 (8th Cir.1999). "While the administrator's decision need not be supported by a preponderance of the evidence, there must be 'more than a scintilla.'" *Id.* at 1048; (citing *Woo,* 144 F.3d at 1162). The Court can determine the reasonableness of the Claims Administrator's conclusion by evaluating "both the quantity and quality of the evidence" supporting the decision to deny second tier benefits. *Delta Family–Care Disability and Survivorship Plan v. Marshall,* 258 F.3d 834, 842 (8th Cir.2001). And the Court does not normally admit additional evidence in making this determination. *See Brown v. Seitz Foods, Inc. Disability Benefit Plan,* 140 F.3d 1198, 1200 (8th Cir.1998). In interpreting the terms of the Plan, the Court looks at "whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language in the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan." *Finley v. Special Agents Mutual Benefit Assoc., Inc.,* 957 F.2d 617, 621 (8th Cir.1992).

■ Eaton's overarching objection to Ballinger's claim is that he failed to provide sufficient documentation and information to support his claim for second tier benefits under the Plan. Eaton asserts that without prior discussion of employability, Ballinger's doctors were merely checking a box on the DCS and failed to supply any documentation that uses the specific language required by the Plan to support their conclusions on the DCS forms. Eaton also specifically discredits each piece of Ballinger's medical evidence. In addition, Eaton points to its own medical evidence that asserts Ballinger can perform sedentary work.

Eaton disregards the DCS forms provided by Dr. Kenrik and Dr. Egger on October 11, 1996, November 25, 1996, and June 25, 1997 because they provide a disability diagnosis during the first tier benefits time period and do not include a diagnosis regarding the future. The forms all included a diagnosis of totally and continuously disabled until the date of the physician visit. Therefore, the diagnoses did not cover the second tier time period which began in 1998.

Eaton also claims that the medical documents provided by Ballinger within the second tier time period were seriously deficient and did not diagnose him as disabled from *any* occupation. Eaton discredits the DCS and notes submitted by Dr. Artherholt on September 1, 1998 because the doctor stated that Ballinger "appears unable to work" and does not specifically state that he is unable to work at *any occupation.* Also, Dr. Artherholt's notes suggest seeking a report from Dr. Kenrik or Dr. Morrison who are more familiar with Ballinger's condition. Eaton claims that this recommendation to seek a second opinion weakens the credibility of Dr. Artherholt's DCS and attached notes. Eaton also discounts the medical notes provided by Dr. Egger on September 1, 1998, because the notes never discuss Ballinger's employability. Further, Dr. Kenrik's DCS on November 11, 1998 is equally discounted by Eaton because it lacked any supporting documentation of the totally and continuously disabled (unable to work) diagnosis. Finally, the medical notes from Dr. Egger submitted on May 13, 1999 are disregarded completely by Eaton because Ballinger failed to submit a formal written appeal as required by the Plan.

Eaton also claims that it had substantial evidence that confirmed Ballinger was able to work at the time benefits were denied. Eaton cites the March 1996 Employability Report and the July 1998 FCE as support for its decision to deny second tier benefits. Both of these medical reports conclude that Ballinger is able to perform a specified level of sedentary work. Eaton claims that these reports, along with Ballinger's assertions that he "could" or "would try" to work and the deficiencies in the medical documentation submitted by Ballinger, provide a reasonable basis for the denial of second tier benefits.

The Court disagrees with Eaton's assessment of the record. The Employability Report suffers from the same flaw as Ballinger's first three DCS forms: it was conducted during the first tier time period. Therefore, like the first three DCS forms, it does not aid in the discussion of Ballinger's condition during the second tier time period-which is the time period that is presently under review. Similarly, the statements made by Ballinger that he "could" or "would try" to work should not have been given any weight. These were statements of loyalty from a man who had been employed for over twenty years at Eaton, not medical diagnoses. Therefore the only medical evidence of any real strength Eaton had to support denial of second tier benefits was the two hour FCE.

Ballinger's medical evidence easily surmounts the FCE. Dr. Kenrik's November 11, 1998 DCS should not have been disregarded for lack of specificity. The DCS is a form created and administered by Eaton and First Health Corp. The DCS only includes four choices for employment status. None of these choices include or differentiate between disabled from *your own occupation* or disabled from *any occupation*. The treating physician must choose from the four options listed with the most severe being totally and continuously disabled (unable to work). Further, the instructions on the DCS do not mention the inclusion of additional documentation. Nor do the instructions reference additional instructions or specific language that must be followed to continue benefits. The Court therefore believes that it was unreasonable for Eaton to claim that the DCS was insufficient and not specific enough when it was their form.

This means that the weight of the medical evidence was and is clearly in favor of granting benefits. The diagnosis by Dr. Kenrik clearly contradicts the FCE performed by an occupational therapist. Eaton cites *Delta Family–Care Disability and Survivorship Plan v. Marshall,* 258 F.3d 834, 842 (8th Cir.2001), in support of its rejection of Kenrik's DCS because it states that "a treating physician's opinion does 'not automatically control.'" (quoting *Donaho,* 74 F.3d 894, 901 (8th Cir.1996) (emphasis removed)). However, Eaton's reliance on *Delta* is misplaced due to the fact that both *Delta* and *Donaho* dealt with the intricate balancing of one physician's opinion against another physician's opinion. *Delta,* 258 F.3d at 842; *Donaho,* 74 F.3d at 901. In this case, we have the opinion of an occupational therapist who saw the patient for two hours versus a medical doctor who treated the patient for more than five years.

Dr. Kenrik's opinion is further supported by Dr. Artherholt. In the DCS Dr. Artherholt completed, he also diagnosed Ballinger as being totally and continuously disabled (unable to work). Dr. Artherholt also provided notes with his DCS that explained his diagnosis. While it was reasonable for the Claims Administrator to discount Dr. Artherholt's opinion to some degree because of his request for a second opinion and the statement that Ballinger

"appears to be disabled," it should not have been completely discounted.

Finally, Eaton's argument that because Ballinger never discussed employability with his physicians prior to being diagnosed the physicians' opinions should be discounted is misguided. The fact that Ballinger did not discuss his job, or employability at all, with his physicians leads the Court to believe that he was so disabled that he was unable to perform any type of work. Eaton's argument in that regard is therefore to no avail.

*Delta* states that the record must be "evaluated as a whole.'" *Delta* 258 F.3d at 842 (quoting *Donaho,* 74 F.3d 894, 901 (emphasis added)). Viewing the record "as a whole," the quantity and quality of evidence clearly weighs in Ballinger's favor. Dr. Kenrik and Dr. Artherholt both found Ballinger to be totally and continuously disabled (unable to work). The only piece of evidence Eaton has to controvert those opinions is the two hour FCE conducted by an occupational therapist. Based on this record, the Court finds that it was an abuse of discretion for Eaton to deny Ballinger disability benefits.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment is DENIED. Summary Judgment is GRANTED in favor of the Plaintiff. It is further ordered that Defendant must file with the Court, within thirty days, the amount of benefits Plaintiff is due and that Plaintiff is directed to file a claim for attorney's fees pursuant to Fed.R.Civ.P. 54 and Local Rule 54 if he chooses to file such a claim pursuant to 29 U.S.C. 1132(g)(1).

IT IS SO ORDERED.